### DONNER v. ALFORD.

(Circuit Court of Appeals, Third Circuit. January 18, 1905.)

#### No. 11.

CONTRACTS—CONSTRUCTION—WHEN QUESTION FOR JURY.

Where the question in issue was as to whether a written contract, by its terms to be performed in case a consolidation was effected between two corporations, was in fact limited to a consolidation resulting from then pending negotiations, or whether it became effective and enforceable on the effecting of a consolidation as a result of a renewal of negotiations a year later, the writing being silent on the subject, extrinsic evidence of the circumstances and the acts and declarations of the parties was admissible, and, where that was conflicting, the question of the construction of the contract as a whole was properly submitted to the jury as one of fact.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 767–770; vol. 20, Cent. Dig. Evidence, §§ 1874–1899.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

The following is the opinion of the trial court on motion for new trial (Buffington, District Judge):

This is a motion for a new trial. If the court was justified in submitting the case to the jury, we are of opinion it was fairly and impartially done. After careful consideration, we fail to' see how the case could have been withdrawn and binding instructions given. In view of the fact that the alleged verbal agreement was reduced to writing in correspondence subsequent to the termination of the Holland House negotiations and of the subsequent acts and conduct of both parties, we think the court would not have been justified in itself deciding and instructing the jury that the agreement was confined to the first negotiation, which fell through. What the parties meant to cover and what was embraced within the terms of their verbal agreement, reduced to writing in their' correspondence, was a question, in the determination of which the acts, conduct, and declarations of the parties were admissible in evidence, and, if 'admissible, the effect of such evidence was a question for the jury. Etting v. The Bank of the United States, 11 Wheat. 59, 6 L. Ed.

419; Harper v. Kean, 11 S. & R. 280; Barreda v. Silsbee, 21 How. 168, 16 L. Ed. 86; Carroll v. Miner, 1 Pa. Super. Ct. 439. . As we read these cases, it would have been an unwarranted usurpation of the province of the jury by the court had it undertaken to decide this cause itself, and given peremptory instructions for the defendant. The cause was peculiarly one a jury should pass upon. Being, then, of opinion the case was one for a jury, and it having been fully discussed by counsel, and fairly and properly submitted to that body by the court, its verdict should not be disturbed. The motion for a new trial is accordingly refused.

J. H. Beal, for plaintiff in error.

J. W. Kinnear, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The suit in the court below, in which the defendant in error was plaintiff, was brought to recover damages upon two distinct claims, both for the violation of contract on the part of the defendant, the plaintiff in error. For reasons appearing in the record, we are not here concerned. with the first of these claims. The other claim, as set forth in the declaration, is substantially as follows: In 1901, Donner, the defendant below, was president of the Union Steel Company, a corporation organized under the laws of Pennsylvania, and in the fall of 1901, a movement was entered upon for the consolidation of the Union Steel Company with the Sharon Steel Company, another corporation existing under the laws of Pennsylvania. In November, 1901, the officers of the two companies held a meeting in New York, with a view of consolidating the two companies. After the meeting had practically ended, without a prospect of bringing about a consolidation of the two companies, the defendant below, Donner, met Alford, the plaintiff below, who owned 280 shares of the Sharon Steel Company stock, but was not an officer of said company. It appears that Donner and Alford were well acquainted with each other, and the declaration alleges that Donner, in order to secure the assistance of Alford, in bringing about the consolidation of said companies, and upon condition that he use his influence and lend his assistance to secure such consolidation, offered to furnish him, in case said companies were consolidated, sufficient stock in the consolidated company, to make his holdings equivalent to the amount he would receive in the proposed consolidated company, if he owned 1,000 shares of Sharon Steel Company stock, and the said Alford was to pay defendant for such stock at the rate of $175 per share for the 720 shares requisite to accomplish this result. The declaration alleges that the plaintiff accepted this proposition, and, in order to have the offer confirmed in writing, wrote defendant, on November 26, 1901, a letter which was produced and proved at the trial, as follows:

"W. H. Donner, Esq.—My Dear Friend Donner: I have been thinking about your deal since I have talked to you. There are some parties back of Sharon Steel and liable to come to the front at any time and which I am not at liberty to mention. I know that it is the thing to do to join the two companies. It is the opportunity of a young man's life, and you can bring this whole thing around if you will. I have talked with Mr. Darr, and I know that he is willing to do what is fair and right if he can be made to see it. When I

left him I told him if I was wanted to telegraph me, and I say the same to you, if I can be of any service telegraph me. My understanding of your proposition or offer to me is that if a consolidation is formed of the Union Steel Company and the Sharon Steel Company, that you will furnish me stock in the Consolidated Co. equal to what Sharon Steel Co. stock per share would get whatever that may be on the basis of $175. per share for Sharon Steel Co. stock, to an amount of 720 shares of Sharon Steel stock. Or in other words, I now hold 280 shares of Sharon Steel Co. stock costing $175. per share, and if the consolidation goes you will see that I get stock in the Consolidated Company to an amount equal or as though I held 1,000 shares of Sharon Steel Co. stock and I pay you for same $175. per share (720 shares at $175. will be $126,000.00). Of course this is strictly confidential. I have not even given it to the stenographer. Please acknowledge if this be your understanding. I will send you those lists if you want. Now if there is anything you want me to do let me know and I'll be glad to do it. There are great advantages to be gained in this consolidation which you can never realize until you have felt and seen the benefits. I hope to become associated with you and think that I can become a benefit to you with what little experience I have had.

"Yours sincerely,                               [Signed]  W. J. Alford."

In due course of mail, the following answer was received from the defendant:·

"Pittsburgh, Pa, 11—27, '01.

"W. J. Alford, Anderson, Ind.—Dear Sir: Your letter of the 26th to hand. Will state that your understanding of offer I made you on stock is O. K. and is strictly between ourselves.

"Yours, etc.                                    [Signed]  W. H. Donner."

The plaintiff alleges in his declaration that, from that time forward, he lent his aid and influence in every possible way, to bring about the consolidation of said companies, and the proofs disclosed in the record show that plaintiff recommended the consolidation to the Sharon Steel Company, and to that end had frequent interviews with Darr, the president of the Sharon Steel Company, in whose office he had for a time a desk. There were no official meetings, between the officers of the two companies, between November, 1901, and November, 1902. In August or September, 1902, plaintiff sailed for Europe in company with Darr. He testifies that during that trip across the ocean, they discussed the question of consolidation. Upon his return from Europe, in the fall of 1902, Darr, the president of the Sharon Steel Company, took up the question with the officials of the Union Steel Company, and spent sometime in going over their properties, and finally laid before the directors a plan for the consolidation of the two companies. On the 7th of November, 1902, plaintiff testifies that, in company with Darr, he went to Pittsburg, for the purpose of assisting in bringing about the consolidation of the two companies, and offered his services to that end. On the 21st day of November, 1902, an agreement of consolidation was entered into between the two companies.

It was proved by the defendant, that in the interval between November, 1901, when the negotiations for consolidation were attempted and failed, and November, 1902, when a consolidation was effected, a great change had taken place in the situation of both companies. The Sharon Steel Company had increased its capital stock from five to six millions. It had sold $1,250,000 bonds of the Sharon Coke Company, one of its constituent companies; it had added largely to its plants; it had increased its net earnings about

$1,500,000; it had thoroughly explored its ore property, and, without buying any additional property, had demonstrated that there was sufficient ore in the property to make it worth $5,000,000, although the property cost them but $250,000, and in November, 1901, they only asked $2,000,000 for it. The Union Steel Company had also greatly expanded; had acquired large amounts of coal lands, and developed and purchased ore properties worth more than $5,000,000; had acquired two ore vessels, at a cost of $600,000, and was building a railroad, so as to transport its coal and coke from its property to its plants. It also had acquired very valuable harbor terminal property on Lake Erie, with the right to build an independent line of railroad from Lake Erie to the location of their plants.

The contention of Donner, the defendant below, was that this agreement with Alford was confined wholly and exclusively to the effort that was then being made by the parties at the 1901 conference, and that it had no reference to any future deal. That the deal of November, 1902, was a new one taken up on different lines, and with reference to conditions of the two companies entirely different from those obtaining at the time of the former attempted negotiation; that having no contract with plaintiff as to this later deal, the defendant could not be held responsible for his promise with reference to the former deal. Donner also contended, and so testified, that his promise to furnish the plaintiff with a certain number of shares of the stock of the consolidated company, at $175 a share, in case consolidation of the two companies should result from the negotiations in the first deal, was without any good or valuable consideration, and was made solely on account of the kindness and good will he entertained for the plaintiff. He specifically denies that he solicited the plaintiff's good offices in that or any subsequent deal, or that his said offer was made upon the consideration or condition that plaintiff should use his influence or do anything in connection with the deal. It is to be observed that the written memorandum of the alleged contract contained in the correspondence, fails to state what the consideration for Donner's promise was, and it clearly was not the $175 a share, as, confessedly, the shares in the consolidated company would be worth much more than that amount. The plaintiff's contention, on the other hand, was that the agreement was not confined to the specific deal in progress in 1901, but was meant by the parties to cover efforts in the future to consolidate, and that he rendered the services in effecting the consolidation, which was the consideration for the contract on which suit was brought. The court below declined to instruct the jury to render a verdict for the defendant, and charged the jury that, whether the agreement in writing, as set forth in the correspondence between Alford and Donner, was confined wholly and exclusively to the negotiation that was attempted for the consolidation of the two companies, or was meant by the parties to cover efforts in the future to consolidate, was a question of fact for them to determine upon the evidence in the case.

136 F.—48

The question raised by the assignments of error is, whether the court was right in referring this question of fact to the jury. The contention of plaintiff in error is, that the alleged verbal agreement was reduced to writing in the correspondence hereinbefore referred to; that the contract was therefore a written contract, the terms of which were completely and fully set forth in the writing itself, and that, inasmuch as it was silent in respect to any discrimination between the negotiations of November, 1901, and those resulting in the consolidation of November, 1902, no evidence in regard to the same should have been submitted to the consideration of the jury. While it is true that the construction of all written instruments belongs to the court alone, and questions as to the interpretation and scope of a written contract are for the court, and not for the jury, nevertheless, a question as to what a written contract, complete on its face and in its terms, actually covers, or as to what conditions or subject-matter it applies, may be raised at the trial, and as such, is for the determination of the jury. In the case at bar, the meaning of the written contract in these respects is not obvious from an inspection of the writing itself, and the question, whether the agreement and promise of the defendant was confined to the first negotiation which fell through, or had reference to any consolidation of the two companies which might thereafter take place, depended upon extrinsic facts to be found by the jury, and as to the determination of which the acts, conduct and declarations of the parties were admissible in evidence. We do not think the evidence as to such facts was so clear and indisputable as to devolve upon the court the construction of the contract as a whole. On the contrary, we think the record discloses a real conflict of testimony, such as would have made improper the giving by the court of binding instructions in favor of defendant.

The judgment below is therefore affirmed.