MONONGAHELA  &  W.  DREDGING  CO.  v.  JONES  &  LAUGHLINS
STEEL  CO.

(Circuit Court, W. D. Pennsylvania.  March 2, 1906.)

No. 25.

CONTRACTS—CONSTRUCTION—WHEN QUESTION FOR JURY.

In an action on a written contract for dredging, which did not specify the extent of the work to be done thereunder, where the testimony of the parties as to what was said on that subject in the preceding negotiations was in direct conflict, the question of the scope of the contract was one for the jury.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 767.]

At Law.  On motion for new trial.

Reed, Smith, Shaw & Beal, for plaintiff.
Geo. C. Wilson and Burleigh, Gray & Challener, for defendant.

BUFFINGTON, District Judge.  In this case a new trial is urged on the ground that binding instructions should have been given for the defendant.  After careful consideration we are firmly of opinion the court was justified in refusing to take the case from the jury. The suit was brought by a dredging company to recover for removing slag from the bank and dredging it from the bed of the Monongahela river.  This slag had been run there by the defendant company.  Part of it served to form a solid bank and part ran into the stream.  On the bank thus formed the defendant had built coke ovens.  The government having called upon the defendant to remove this encroachment on the harbor line, the latter on March 24, 1902, applied to the Secretary of War for a modification of the harbor line.  Finally a middle or compromise line was suggested by the local government engineer, and on July 3, 1902, the defendant company accepted this line in a letter to such local engineer, as follows:

"If the line as suggested by you is approved, you will agree within two years from the date of such approval to remove the materials placed by us in the river at our lower block of coke ovens on the riverward side of the line you have suggested and above the specified slope."

The two years being about to expire, and nothing having been done by the defendant, the local federal engineer on April 20, 1904, called its attention to the fact.  The defendant then called for bids, and on July 22, 1904, the plaintiff bid by letter, and on August 2d, the defendant accepted the bid by letter.  The bid was as follows:

"Referring to the matter of the dredging which you desire to have done near your coke ovens in the first pool, Monongahela river, as shown to our Mr. Smoot by your Mr. Williams, we beg to make you the following proposition: We will dredge, take away, and dispose of material dredged for the sum of $1.25 per cubic yard, scow measurement. This includes blasting of bank where necessary and all labor and expense in connection with this work, which we understand is to be done in accordance with government specifications."

The plaintiff immediately set to work, before the bid was finally accepted, and removed the slag along the bank, which amounted to

14,967 cubic yards, and for which plaintiff was paid. It also dredged from the bed of the stream 7,106 cubic yards for which defendant refused to pay. For this last item this suit was brought and recovery had. The case turned on the question of what was covered by the contract; the parties differing radically as to what occurred between Smoot and Williams. The contention of the plaintiff was that Williams had shown Smoot nothing except the line at the top of the bank at which the excavations were to begin, that nothing was said as to the foot or depth of the work, and that the work to be done was determined by the contract, which provided it was "to be done in accordance with government specifications." By the defendant it was contended that Williams had pointed out the shaded portion of a certain blue print made by the defendant, as the work which was to be done. These conflicting contentions by no means cover the facts involved in the case, but in and of themselves they raise such issues of fact that it is obvious a jury's work to determine them. The case falls within those referred to in Donner v. Alford (C. C. A.) 136 Fed. 750, where it is said:

"While it is true that the construction of all written instruments belongs to the court alone, and questions as to the interpretation and scope of a written contract are for the court, and not for the jury, nevertheless a question as to what a written contract, complete on its face and in its terms, actually covers, or, as to what condition or subject-matter it applies, may be raised at the trial, and as such is for the determination of the jury."

We may well question whether the court should not have adopted the plaintiff's view that the contract made the government's specification the measure of the work to be done, but the defendant certainly has no ground for complaint in allowing the jury to pass on the question as to what work the contract covered. Under the defendant's contention the contract was not self-explanatory. It depended on what Williams had shown Smoot, and what that was was a disputed fact which the court could not settle. Nor can we find any just ground to set aside the verdict. That Williams, who executed the contract, may not have known all the facts bearing on the construction of the contract, did not preclude the jury from considering the acts and declarations of the defendant, through its officers, in determining just what this contract covered. The testimony shows that Williams was told by his superior officers that this work was to be done quickly, and he says himself that the chief idea was to satisfy the government. There was proof that the plans of the government when this bid was made covered the removal of the slag in the bed of the stream, which plaintiff dredged, and no denial of that fact was made; that the letter of July 3, 1902, was an undertaking by the defendant to remove "the material placed by us in the river at our lower block of coke ovens on the riverward side of the line you have suggested and above the specified slope"; that the letter of defendant's president, Mr. Jones, to the Secretary of War, dated July 29, 1904, wherein, after this work was started by plaintiff, it was said:

"In accordance with our agreement of July 3, 1902, we are now removing the fill in front of our property in first pool of the Monongahela river, outside of the established harbor lines."

With those facts in evidence before it, showing that the government specifications contemplated, as they do, that defendant should remove the slag under the pool level, which the plaintiff afterwards did remove, and that the defendant subsequently in July, 1902, agreed to remove it within two years, and that in July, 1904, they wrote they were performing their agreement, we think the jury was justified in finding for the plaintiff.

The motion for a new trial is therefore denied.