### ANCHOR COTTON MILLS et al. v. BELLOW et al.

(Circuit Court of Appeals, Third Circuit. February 24, 1922.)

No. 2813.

1. **Sales 🔑23(3)—Acceptance of order held to create contract.**

Under a provision in an order for merchandise reserving to seller the right "to establish and from time to time to modify, regulate, and fix buyer's credit limit," a subsequent approval of the buyer's credit as respects the order and notice of its acceptance created a completed contract, binding on both parties, and not subject to modification by seller without buyer's consent.

2. **Sales 🔑150(1)—Unauthorized insistence by seller on modification of executory contract held breach.**

Where an order for merchandise had been accepted, thus creating a contract, the subsequent insistence by the seller on a modification by which the buyer would be deprived of a 10 days' credit, with discount, given by the contract, and refusing to deliver goods until such modification was made, *held* a breach of the contract, which authorized the buyer to treat it as canceled.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by the Anchor Cotton Mills, to use of Carl Vietor and others, trading as Frederick Vietor & Achelis, against Louis I. Bellow and Joseph Cotlar, trading as the Bellow-Cotlar Company. Judgment for defendants, and the use plaintiffs bring error. Affirmed.

Percival H. Granger and Reber, Granger & Montgomery, all of Philadelphia, Pa., for plaintiffs in error.

Samuel G. Schwartz, of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] On February 4, 1920, the Bellow-Cotlar Company, hereinafter called Bellow, the defendant, gave to the firm of Frederick Vietor & Achelis, hereinafter called Achelis, the use plaintiffs, who were selling agents for the Anchor Cotton Mills, the legal plaintiff, a written order for ten cases of Jeannette ginghams,

🔑For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be made by the Anchor Mills and delivered at the mills, in May, June, July, August, and September, 1920. The price was 33 cents, with "3 per cent. 10 days." The order stipulated:

"Terms and dating subject to right of seller and Fred'k Vietor & Achelis to establish and from time to time to modify, regulate, and fix buyer's credit limit."

What followed in the way of acceptance and determination of credit on the order was testified to by John E. Rice, in charge of such matters for Achelis as follows:

"Q. What relation, if any, exists between the Anchor Mills and Frederick Vietor & Achelis, and did exist at that time? A. Frederick Vietor & Achelis are the sales agents for the Anchor Mills.

"Q. This order is dated February 4, 1920. When you received it from Bellow-Cotlar Company, what did you do with it, if anything? A. That was immediately transferred to the sales manager for his approval and O. K.

"Q. What happened to it then? A. It came back to me.

"Q. What did you then do with it? A. It was given to the chief order clerk, by whom it was sent to the credit man, who is located on Madison Square.

"Q. Then what became of it? A. It was left with him until *finally approved as regards credit*."

As to the action of the mill, the witness continued:

"Q. Then what? A. Then it was returned to the Haywood Department [a department of Achelis] at 65 Leonard street, whereupon it was submitted to the mills in the form of a transcription.

"Q. What did the mill do with it? A. The mill *accepted the order to us*."

As to the notification to Bellow, the witness said:

"Q. What did you do? A. We then notified this defendant that *the order was accepted by the mill*."

In view of these proofs, we agree with the contention made by the plaintiffs in their brief that:

"The contract dated February 4, 1920, was complete, defendant's credit was finally approved and the whole contract binding on both parties on February 16, 1920."

In thus making the contract complete, it will be observed that the plaintiffs, both legal and use, had, as testified to by Rice, "finally approved as regards credit." This approval, as we hold, was an exercise of the power given them in the order as to credit which we have quoted above.

[2] By the single contract thus made the cases of gingham were to be delivered at the mills, Charlotte, N. C., and the buyer had a 10 days' credit, within which it was to have 3 per cent. discount. It follows that thereafter this contract was the law of the parties, unless changed by mutual consent, and it is upon an alleged attempt of the use plaintiffs to change it without consent of the defendant, on February 21st, this case in our view, turns.

With this contract complete and unconnected with other dealings of the parties, Bellow, on February 17, 1920, gave Achelis an order for some cases of Spencer ginghams, which, of course, involved additional credit. Thereupon Achelis, on February 21, 1920, inclosed in a letter

to Bellow an agreement for Bellow to sign, which the latter refused to do. This letter and agreement constitute the crux of the case, if they apply to the contract of February 4th. While no mention is specifically made of the Jeannette contract in them, the question of whether they were covered was properly submitted to the jury. See Donner v. Alford, 136 Fed. 750, 69 C. C. A. 402, and its finding establishes that such was the fact. In that respect the proffered agreement was:

"In consideration of your [Achelis'] contemplated execution of orders which you now have on hand, and in consideration of your acceptance of the present tendered contract, and in further consideration of your acceptance of additional orders that may be placed, we [Bellow] beg to advise that we shall at all times *during the life of the contracts anticipate any portion of your account* that you may find it necessary to call upon us."

Such being the case, it seems clear to us that this agreement, had it been signed by Bellow, would have changed the contract of February 4 in a material matter, in that it would have eliminated the 10 days' credit therein given Bellow after delivery, and compelled payment in cash on delivery.

While the letter asking signature was couched in the courteous phrasing of request, so far as Achelis was concerned, there is no doubt that as to the mills it meant demand. "The mills insist that we have the arrangement understood." This insistence was never modified by the mill, which company, it will be observed, is the legal plaintiff, and it now brings suit for damages on this contract, which it unwarrantedly insisted should be changed by Bellow as a condition of delivering the Jeannette ginghams contracted for. In view of this insistence, and the attempted change in, and departure from, the contract, Bellow was justified in treating it as a departure from, and therefore a repudiation of, its contract by the mill.

Without entering upon a discussion of the various assignments of error as to admission of evidence and the like, it suffices to say we find no error therein, and we sufficiently go to the marrow of the case when we say that the controversy finally turned on the question which the court summed up in its answer to the jury's inquiry:

"If the accompanying letter, dated 2/21, which incloses the agreement which was sent by plaintiff to defendant, is construed to include the contract for Jeannettes, would it, from a legal standpoint, constitute a breach of contract on the part of the plaintiff?"

And its reply thereto was as follows:

"That is the question you want answered. The answer is 'Yes.' Let me add, however, this qualification, that you are to find the fact. This letter is evidence, and perhaps it may be characterized as the very best evidence; but you are to find the fact under all the evidence in the case, including this letter and everything else that bears upon it. That is the answer to the question of whether on February 21 the defendant included Jeannettes, whether the offered contract included the Jeannettes, when they said in effect that they would not furnish the defendant with any goods, unless the defendants signed what they call the letter, which was really an additional contract. If that was their position, they have no right to recover. I think that answers your question. You may take the case and dispose of it."

As the signing of this submitted agreement was an insistence of the legal plaintiff, as it has never receded from that position, and still

contends that under the clause quoted in the order, which we hold gave no such power, it had that right, we are of opinion that such insistence brought the case within the landmark case of Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, that an unqualified and positive refusal to perform a contract, though the performance thereof is not yet due, may, if the renunciation goes to the whole contract, be treated as a complete breach, which will entitle the injured party to bring his action at once.

The judgment below is affirmed.